Clerk, please call the next case. 121-0477-WC First Priority Elevator and Illinois Insurance Guaranty Fund Appellants by Peter Sink versus the Illinois Workers' Compensation Commission, Salvatore Beccaro Appellee by Kevin Morrison. Mr. Sink, you may proceed. Good morning. May it please the clerk and counsel, my name is Peter Sink and I represent the Plaintiff Appellant, Illinois Insurance Guaranty Fund and First Priority Elevator in this appeal. There are two matters before the court in this appeal. Mr. Sink, before you get into your argument, I have some questions. Who prepared your brief? That was prepared between our office and Lord and Locke. Locke and Lorde. Do you have some problems with what's not in your brief, especially in the table of contents? Oh, I did not. I did not notice that. What are you referring to, Justice? Your appendix. Which exhibit will we find the arbitrator's decision? I actually have the arbitrator's decision in my copy. If you do not have that, I apologize. I don't know why that would have been left off of your copy. It's not in, it wasn't in our copies. I apologize profusely. And then the other question I have is, you've got three entries in here that say, what was it called? Administrative review volume. Aren't you required to tell us on what pages in the record the testimony of each witness begins and the pages in the record where their cross-examination begins? We are, and I do apologize for that. This was finalized by Locke and Lorde, and I did not see it before it was filed. I mean, it's, we had to go through 1,063 pages of record to find out who testified, when they testified. And I don't understand how you could fail to include a copy of the this whole case revolves upon what the arbitrator said and the commission affirmed and adopted, but go ahead. Justice Hoffman, I apologize that I'm horrified that that is not in your copy. I will try to do my best to answer any questions that you may have. The first issue, as I indicated, involved a question of law and de novo review regarding whether the commission complied with section 8-1B of the act. The commission failed to comply with section 8-1B of the act, because its decision relies on factors beyond section 8-1B's five exclusive factors to determine. Can I stop you right there? Because I was intrigued by the phrase that you use in making the argument that they considered factors beyond those specified in the act, and you use the phrase they considered factors, albeit unnamed and unknown. Can you tell us what unnamed and unknown factors they considered beyond those specified in the act? Justice Hudson, honestly, I would have to guess and speculate at what those factors were. I could only assume, and I had in part of my argument, that they must have used factors such as maybe an award that they gave to somebody with a similar injury a week ago. It's not specified in here, but we do know that all five of the factors in this case went against the claimant at the trial. How do we conclude there, because of that, that they considered unknown and unnamed factors? Aren't you sort of engaging in speculation if you can't pinpoint what the factors are? I am engaging in speculation, but I believe that goes directly to them engaging in speculation and determining the PPD award. And one of the reasons why I would say that, quite frankly, is that we would argue that the five factors are enumerated, that they're mandatory, that they're concise, that they're precise, that there are no expanding words in the act, such as including, or not limited to, or for example. So our argument is really that these are exclusive factors, that there are no expansive words, and that no other factors should be included. So where did they come up with this award? Are you, in essence, saying because the claimant lost the case, they must have considered other factors? Is that sort of what you're arguing? That's not what I'm arguing. I'm arguing that the evidence in this case all favored the trial level. None of it favored the claimant. But you would admit the commission did consider the enumerative factors, but you believe they considered factors beyond that that tipped the scales. Is that sort of what you're saying? I do believe that they considered factors beyond that that tipped the scale. We don't know what they are. I have no idea what they would be. And that is then why we bring the appeal, is to get some definitive word as to what those factors are, what factors are included in the determination of a PPD award, and maybe going into exactly how we limit interpretation of the Act. Well, maybe we're going to break some new ground here. But so I guess the question to ask is, do you have any case law that you've uncovered that specifies, clearly the commission is not entitled to consider any other factors beyond those specified in AB of the Act. Do you have any case law that says that? I'm not saying they did, but do you have any case law that says they're limited? In the year 2000 in Hormel Foods versus Zunder, the first district noted that the enumeration of a list of factors in an administrative statute does imply the exclusion of other factors unless there is evidence of contrary legislative intent. So my argument here is that because there is a list of enumerated factors in this administrative statute, if you as the justices do not believe that is clear and concise and unambiguous, you may then turn to the legislative history, the applicable principles, case law, arguments, and authorities raised in this appeal and raised in the amicus brief, which concisely outlines the legislative history and the purpose of the amendments in 2011. And I note that we have this argument exactly one week before the 11th anniversary of those amendments. And at the time of those amendments, we were told that those amendments would bring great reforms at the Illinois Workers' Compensation Commission. Nobody has seen those great reforms to date. So counsel, with Justice Hudson's questions, and it's not a bad argument or response that you've made, but you've sort of shoestrung an argument with regard to administrative reviews. So in terms of best authority that these enumerated factors are the exclusive factors to consider, you don't have spot on authority or you don't have best authority for us? That's the best authority I have for you is the first district decision in Hormel. That's fine. I just want to be clear. I understood. But that argument is premised on the assumption that they considered something outside the five factors. Correct. And I'm going to get into why I believe that is in my argument, okay, if you'll allow me. Go ahead. So the second issue that I think is before you is also the application of the manifest weight of the evidence standard here. I think that the commission fails under this standard because the plaintiff appellant in this case, such that the opposite conclusion is clearly apparent. In this case, the levels of the backers to be used are the reported level of impairment pursuant to the AMA report, the occupation of the employee, the age of the employee at the time of the injury, the future earning capacity of the employee and evidence of disability as corroborated by treating medical records. The word corroborated is important here. Again, it contains no including not limited to, or for example, is concise. It is clear. And it appears to be mandatory in its word of shell. So the plain language of this act mandates that the commission consider only five factors. It's further exemplified by the fact that the legislator in the act said, we want you to use these five factors, but not only do we want you to use them, you must tell us about each factor. Why are you, what facts support this factor? And how much did you give it? Wait, we talk about the commission using. Hold on. The factor you're talking about is the fifth factor. And you don't like the fact that they awarded him 20% when Heller said he was only entitled to 2%. But that's not to suggest there is an evidence in the record that corroborates the 20%. He testified that his current condition of left shoulder has reduced mobility. The arbitrator noted that this man had a very serious injury. He has permanent restrictions. He testified that he experiences pain constantly. He has an inability to lift heavy objects, and he has difficulty attempting normal functions. And it goes directly to the question of his disability. So why does that evidence not corroborate a 20% finding? Okay, Justice, thank you so much for the question. The fifth factor says evidence of disability as corroborated by the treating medical records. And we know what Harris's finding was. He said the evidence of disability as corroborated by the treating records, he found that both medical records and petitioner testimony corroborated one thing, that he has not seen a doctor since 2016. He's not had a prescription since before that. And he said and held in his decision, continued treatment and care of a physician would be solid evidence of continued impairment. But there is simply nothing here in three years. He has permanent restrictions. There's no correct question about that. And that's in his medical records. And the extent of his injury is in his medical records. And the fact that he has permanent restrictions is there. So why can't the arbitrator of the commission also consider the fact that he has difficulty performing certain functions like lifting heavy objects? Well, this goes to the interpretation of the statute, the arbitrator went on to say that Verma simply stated he was an MRI and no further discussion is petitioners disability. Now, my answer to your question is this, the legislator put corroborated by treating records to take away the subjective biased testimony of the petitioner who stands to earn more money by complaining that he has severe limitations and inability to do all of this. So in this particular case, and why this case is so different is because it is not corroborated by the medical records. There was no treatment for over three years, no need for prescription medical bill, and him working in the same occupation that he worked in prior to the date of the accident for now at the time of trial over two years, making more money than he ever did before. So in this case, I think we go right back to the app and we have to determine what did they mean in the app by the corroboration of the level of disability by the treating records. And I think arbitrator Harris hit this on the head when he said there is nothing here. So he must have then relied on only the subjective testimony of the petitioner in terms of his limitations. And that is flawed. It's flawed according to the app. And it's flawed according to what the legislator meant by that. They wanted it corroborated by the treating records in order to substantiate and take the bias of the petitioner out. And I must tell you, in almost 30 years of doing this, these cases to me always came down to a contest between the respondents hired medical expert and the petitioner's treating expert. If you look at this case, you take factor one versus factor five. Factor one, arbitrator Harris says, I give great credibility and substance to Dr. Heller's opinions, but then dismisses the AMA rating without any criticisms of the means, manner, or methodology in which he arrived at it. He goes on in factor five to criticize really deeply any corroboration of continuing disability by the petitioner. Remember that he called the petitioner's testimony in this case, you know, inexplicable, not credible on each of these factors. So the question becomes in a case where you have all five factors, in my opinion, in my reading, which go in favor of the respondent employer at trial, how do you pick up a 20% in as a whole award, which goes above and beyond really what even prior trial awards are for torn rotator cuffs? That's what I think. Are we entitled to reweigh the commission's findings on these factors? Can we reweigh the evidence? I believe you can reweigh the evidence and factors as a matter of law if they fail to interpret the I think you're just about out of time, but I do want to ask you one question. That's still troubling me somewhat. Tell us how we would announce a decision or arrive at a decision that says with regard to the factors, we find that the commission considered improper factors beyond those specified in eight one B of the act. We don't know what those factors are. We don't know how they considered them, but we find that they did. Now, how could we announce a decision like that? In this case, you announced that the exclusive and sole factors in arriving at a PPD award are the five factors enumerated by the legislator. Well, that's fine. But you said they decided this case based on unknown and unnamed factors. And in this case, the medical treating records did not corroborate the petitioner's testimony. And therefore, a either the petitioner, the commission looked at something outside of the law, or it's totally against the manifest weight of the evidence. And the only compelling argument here is that the AMA rating is the best best approximation as to what the impairment is for this man. Commission, the commission awarded minimal, minimal reliance on Heller's AMA opinion. And they specifically said so. Why though? Well, probably because according to the arbitrator, and I'll read it from the arbitration decision, petitioner sustained a serious left shoulder injury that resulted in permanent restrictions. I guess the commission didn't believe that when you sustain a serious shoulder injury that requires permanent restrictions, that that only equates to 2% of a man's all. I understand your argument, Justice. But I would tell you that the FCE was in the dictionary of occupation titles, medium physical demand level. The FCE was flawed because it used a wrong job title from a wrong employer. But it also said he's returned back to at least the medium physical level. So we're talking about disability from your ability to perform your job. He was back to where he was predate of accident. So the failure to corroborate medical records with his testimony is his disability. And the fact that he's got a flawed FCE in favor of him that still says you can pretty much do everything you did prior to the date of this accident. All of those go to the fact that this is a completely unchallenged AMA rating, not criticized by anyone, not the petitioner, not the petitioner's doctor, the doctor never weighed in, the treating doctor never weighed in on disability in this claim at all. And the arbitrator found that he offered nothing in terms of disability. But guess what, more importantly, the commission reviewed with every one of arbitrator Harris's findings. And by agreeing with them, they agreed that every factor weighed in favor of the respondent employer in this case. They agreed that the petitioner's testimony was inexplicable, that it was not credible. They agreed that verbal offered nothing in terms of disability. They agreed that Dr. Heller was afforded substantial credibility in his report and opinions. So if that's the case, and Heller's granted by the arbitrator, by the commission substantial credibility, what's the excuse for ignoring completely the AMA rating? It violates section 8.1B in that they did not explain why they discounted his and quite frankly- I don't think they didn't ignore it. They agreed with arbitrator Harris. Elizabeth Coppoletti and her dissent in the commission went further to explain each factor separately and why she would lower the PPB rating. I think in this case, after 11 years, this case screams for the appointment of the AMA impairment rating. Okay. Mr. Sink, you'll have time in reply. Thank you. Mr. Morrison, you may respond. May it please- oh, sorry. I was on mute. May it please the court, my name is Kevin Morrison. I represent the appellee in this claim, Mr. Beccaro. To answer some of your questions, one of the questions specifically asked by, I believe it was Judge Hudson, does this court generally re-weigh the five factors developed by the commission? No. And they were pretty- you've pretty clear on this in, I would say, dozens of claims, but the one that's most relevant is flexible staffing. This court specifically stated that that's not your purview. The commission is the one in the best position to weigh the five factors and it's not this court's job to go back and redo so if someone like the appellant is unhappy with it. One other thing I thought was in the appellant's argument is that he touched on a couple things that have already been claimed on this claim. First, one of the things he concluded on was that he wants the AMA to finally be adopted. That's the goal here. They wanted this- this whole trial is about trying to make the AMA adopted, which this court has talked about in half a dozen claims and have we've directed it as the primary factor. It's only one of. We've rejected that they- we have to put in issues of impairment, which I believe Mr. Sink talked about a couple times that we- that they didn't do so here. These are things that are not required from the petitioner to get a PPD award and this court has ruled in that favor fairly recently. Mr. Morrison, how do you respond to the central argument that the commission considered factors beyond those but I- I don't think this- the commission is- I'm not acknowledging that the commission is limited to the five factors. He signed some case law from the first district though that says that he purports to say. Correct, but the flexible staffing this very panel actually talked about it themselves and saying decisions of an arbitrator or commissioner shall be based exclusive evidence and the record has been officially noticed but they don't- they actually- this court actually disagreed with it. They said the commission- the commission arbitrators are free to look outside those five factors because the act doesn't specify exclusivity just like he says. It doesn't say only. It doesn't say just these five factors and it lists and if anything the factors that they're determining the FCE, the permanent restrictions, those would fall under factor five anyways. That's a fairly broad category. The other thing is that as this state- as this panel has found the statute is an ambiguous. There is no need for statutory construction and Conway Freight, this very panel, flat out stated that section of the act is not an ambiguous statute. Counsel, Mr. Morrison, why don't we just cut to the chase and say what supports 20 percent of a man is horrible and tell us about this? Well, what would support the nature and extent of this claim is that the evidence of the testimony of the petitioner, he testified it cost him sleep. It talks- he testified that he uses ice. He testified he used over-the-counter medication. He testified and demonstrated lack of range of motion. All of these things were consistent with a functional capacity exam. These were- these were consistent with his examinations by the treating doctor, the AMA doctor. Nothing in here was uncollaborated unlike what Mr. Sink has alleged. He testified that he can't lift heavy weights and he encourages pain when he lifts above shoulder level. Again, these things are completely consistent with what his doctors testified to or his doctors documented what the functional capacity exam found and even what the Mr. Sink's AMA rating rater found. All of these things are consistent. They're not uncollaborated. There's no medical testimony doubting his need for restrictions. In fact, Dr. Heller agreed with the need for restrictions. So while they- Mr. Sink has made arguments about the functional capacity exam being flawed in some manner, that does- regardless of what job duties they described, it still gave him permanent restrictions of medium level. This is a gentleman that because of his work injury is in a physical trade as an elevator mechanic and he's been doing it for 30 years and he can no longer- and he lost a job of 30 years while there's- he was on loan to First Priority where he got hurt. His testimony shows that that was a partnership. He was planning on able to do his job. Then why did neither company, one of nearly 30 years, not take him back? Why did the company that he worked for not take him back? They could have. He asked them. He testified. He asked them and they didn't. And it was the opinion of our vocational counselor that if he had not found the job he had, he wouldn't have had a position. There wouldn't be a job and and he's beholden to this. He's in jail. If he loses position, he might not be able to do his trade anymore. So if anything, I think the commission, given their commission and arbitrator, given the facts pointed out by Mr. Sink, gave us a lower award than what I would have expected for this type of injury. And I think they did account for all that. In fact, we mentioned it with all five factors. She gave the big difference that she did was she gave some weight to the AMA rating versus minimum weight. And she gave him 15. So she did take into account the AMA rating. She gave it more weight than what the majority did. But she still found him 15 percent disabled, which is two, which what they're asking this panel to do is enforce two percent. Two percent is the impairment rating. Again, as the score is rejected there, that is not the primary factor. The other factors don't modify it. And Mr. Sink would have us push away, say, oh, we should agree with arbitrator Harris on the other four factors. But when it comes to this, we should just ignore him. It's not consistent. And I'll end my argument with the words of arbitrator Harris when he finalized when he was talking about permanency right after he gave the award. Petitioner sustained a serious left shoulder injury that resulted in permanent restrictions, although not to the proven extent of his restrictions, render a petitioner unable to engage or participate in his usual and customary occupation employment as a union elevator mechanic. So when he was looking at this, he looked at the guy's he looked at his profession. He looked at he still had permanent restrictions. He had a double operated shoulder. Everything in here is consistent with the award presented and it's consistent with other commission decisions with similar injuries. In fact, it's a little low. And with that, I'll rest unless the panel has any further questions for me. I don't see there are any. Mr. Morrison, thank you. Thank you. Mr. Sink, you may reply. Thank you. And I'm glad that the flexible staffing case was the first case that was brought up because the actual holding inflexible was whether the claimant's testimony as his disability was corroborated by the medical records. And this panel found that in fact, his last physical therapy record in medical treatment completely corroborated his testimony. At the time of this trial, the claimant was still on Norco, could not return to his prior job. And every one of the other four factors weighed heavily in his favor. What you said inflexible about the fact that the commission can can use are free to evaluate other relevant considerations. It was dictum. It was not a holding of this court. We believe the specific question here for you today is, are the five factors exclusive? Is this statute clear, precise and unambiguous? Can they look to other factors outside of this? I would suggest to you that the legislative history, well, excuse me, we don't we don't have to answer that question. If we find that they didn't, if they didn't look at factors outside the five, okay, I do not require to even address it. Correct. I do believe that this claim is completely distinguishable from any of the in favor of the claimant at the time of trial. I believe that they were explained by arbitrator Harrison, but I believe that the decision was arbitrary in completely dismissing the AMA rating of Dr. Howard, given that he was afforded substantial credibility with his opinion. And I think that is also a way to send this claim back or to find that the law was inapplied here. I would also suggest that there has been enough confusion for 11 years over this act and over these five factors that this may well involve a substantial question warranting consideration by the Illinois Supreme Court. Thank you. Thank you, Mr. Singh. Thank you, Ms. Morrison, both for your arguments in this matter.